**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

DEANNA E. SMITH, an individual,

PLAINTIFF,

v.

JANUS CAPITAL GROUP, INC., a Delaware corporation,
and, JANUS MANAGEMENT HOLDINGS CORPORATION, a Delaware corporation.

DEFENDANTS.

---

**VERIFIED COMPLAINT**

---

COMES NOW the Plaintiff, DEANNA E. SMITH, by and through her undersigned counsel at the law offices of Bryan E. Kuhn, Counselor at Law, P.C., and submits her Verified Complaint against Defendants, JANUS CAPITAL GROUP, INC., and JANUS MANAGEMENT HOLDINGS CORPORATION, alleging as follows:

**PARTIES**

1.     The Plaintiff, DEANNA E. SMITH (hereinafter "Plaintiff" or "Ms. Smith"), is a citizen of Jefferson County who presently resides at 5701 S. Queen Street, Littleton Colorado, 80127.

2.     The Defendant, JANUS CAPITAL GROUP, INC., (hereinafter "Defendant Janus Capital," or collectively "Defendants") is a Delaware for profit corporation, with its principal place of business located in Colorado at 151 Detroit Street, Denver, Colorado 80206.

3.  The Defendant, JANUS MANAGEMENT HOLDINGS CORPORATION.,

(hereinafter "Defendant Janus Management," or collectively "Defendants") is a Delaware for

profit corporation, with its principal place of business located in Colorado at 151 Detroit Street,

Denver, Colorado 80206.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331, because

the instant action revolves around federal questions arising between the Parties as stated *infra.*

5.  In addition, this Court has jurisdiction over the Defendants as the complained of

unlawful employment practices took place at 151 Detroit Street, Denver, Colorado 80206 and the

Defendants, as residents of the state of Colorado, maintain substantial, ongoing business

operation(s) at that address.

6.  The Court also has supplemental jurisdiction over the state law claims pursuant to

28 U.S.C. § 1367.

7.  Venue is proper pursuant to 28 U.S.C. § 1391(a) and (b).

## ADMINISTRATIVE PROCEDURES

8.  Plaintiff satisfied her statutory obligation to exhaust administrative remedies by

timely filing a charge of discrimination with the United States Equal Employment Opportunity

Commission (hereinafter "EEOC") on or about August 7, 2013, regarding the alleged

discriminatory conduct complained of by Defendants.  On February 12, 2014, Plaintiff received

her Notice of Right to Sue and brings her Verified Complaint within ninety (90) days of having

received that notice.

## FACTUAL ALLEGATIONS

9.     Plaintiff, a fifty (50) year old female, was hired by Defendants on March 31, 2008, on a contractual basis, as a Graphic Designer.

10.     Plaintiff's work entailed creating design solutions for use with marketing and sales within Defendants' company.

11.     Defendant Janus Capital is a publicly owned investment firm which provides growth and risk-managed investment strategies and manages equity, fixed income, money market, and mutual funds.

12.     Defendant Janus Management is a wholly-owned subsidiary of Defendant Janus Capital.

13.     Due to her excellent work, Plaintiff was hired on as a full-time employee of Janus Management Holdings Corporation in February, 2010.

14.     Although Plaintiff had only been employed by Defendants since 2008, she has over thirty (30) years of experience and expertise in her specialized area of graphic design.

15.     Throughout her career, Plaintiff has been a high level performer who proved to be a valuable asset to the company.

16.     Plaintiff never received a write-up or reprimand, but did receive regular pay increases and bonuses throughout her employment with the Defendants.

17.     However, Plaintiff frequently experienced ageist remarks such as "[w]e can bring in two younger people for the price we pay you."

18.     From 2008 to 2012, Ms. Smith's supervisor was Graphics Manager III, Molly Bevan.

19.     In 2011, Ms. Smith told Ms. Bevan, that she [Plaintiff] had the experience and

talent to be a senior designer.

20.    Once Ms. Smith indicated a desire to move up within the company, Ms. Bevan

began to unnecessarily criticize the Plaintiff's work performance for the first time and hold her to

a higher standard than other similarly situated employees.

21.    On or about May 16, 2012, Ms. Bevan began counseling Ms. Smith stating that she

was "rude" and "unprofessional," but failed to provide any concrete examples of the alleged

misbehavior.

22.    Ms. Bevan counseled Plaintiff again on September 12, 2012 and on December 13,

2012 for a "lack of professionalism," again without providing any concrete examples of the

alleged behavior.

23.    Ms. Bevan also did not provide Plaintiff any suggestions as to how she could

improve any alleged deficiencies, relying instead on open-ended meetings with no clearly stated

concerns or proposed remedies.

24.    On or about January 23, 2013, Ms. Bevan was promoted to Creative Director.

25.    Huy ("Fox") Chung, a fellow graphic designer under the age of forty (40) was

promoted to Graphics Manager and became Plaintiff's direct supervisor.

26.    Similarly, Mr. Chung assumed a supervisory role over Jenny Martinez, another

employee of Defendants who is over forty (40) years of age.

27.    The other graphic designer in the department, a female under the age of forty (40)

Amy Raymer, continued to be supervised by Ms. Bevan.

28.    On February 27, 2013, Ms. Bevan asked to meet with Plaintiff regarding Mr.

Chong's promotion.

29.    Plaintiff asked Ms. Bevan about the reason for separate supervisors, and the meeting quickly became hostile when Ms. Bevan asked if Plaintiff, "even wanted to still be employed by Janus."

30.    Concerning the reason for separate supervisors, Ms. Bevan specifically stated that Plaintiff was "[o]n the retirement path," and Ms. Raymer was not.

31.    Plaintiff met with Defendants Human Resources Representative (hereinafter "HR") Allison Yeh to address her concerns about the hostility of the meeting and her claims of discrimination.

32.    Ms. Yeh stated that she would address Ms. Bevan's behavior, but upon information and belief, no action was taken in this regard.

33.    Following Plaintiff's meeting with HR, the scrutiny of Plaintiff's work escalated to even higher levels.

34.    Ms. Smith was no longer able to get help from others in her department in completing assignments, and the Plaintiff was no longer afforded any extra time to complete deadlines, unlike her counterparts who were able to work in teams and were granted such extensions.

35.    Ms. Bevan continued to counseling Ms. Smith by accusing her of "socializing too frequently, and bringing personal problems to work," and "being curt with and not talking to her co-workers enough."

36.    In yet another counseling session on February 27, 2013, Ms. Bevan stated, "[i] am really tired of having to do this with you…are you just going to sit there and pretend you do not know what this is about?"

37.   Ms. Smith stated that she'd spoken with other employees about the concerns addressed by Ms. Bevan, who interrupted her stating, "I find it hard to believe that anyone would come to *you* (referring to Plaintiff).*"*

38.   On or about February 28, 2013, Plaintiff's supervisor, Mr. Chung, stated to her that it was, "[i]t was really unusual that someone of your age does not know what they are doing with their career yet."

39.   On or about February 28, 2013, Plaintiff complained to Defendant Janus Management's HR about her supervisor's comment.

40.   In response, Ms. Yeh replied that Mr. Chung "[j]ust hadn't been through management training yet."

41.   Ms. Yeh did not address the situation then and nothing was done in response to Plaintiff's complaints to reprimand the offending parties or stop the discrimination from continuing in any way.

42.   Upon information and belief, Mr. Chung was required to retake a Workplace Respect Training course given to all managers and told, "not to make age-related comments."

43.   Immediately following her complaint about Mr. Chung's latest comment, Ms. Smith had team lead responsibilities taken away from her and given to a younger Contractor who is under the age of forty (40).

44.   Similarly, immediately following her complaint, Ms. Bevan increased Plaintiff's workload while subjecting her to an unreasonable standard of performance, despite that she was no longer Plaintiff's direct supervisor.

45.   Similarly, Ms. Bevan added clients to Ms. Smith's schedule, and unreasonably

burdened her with more work than any other similarly situated designers.

46.     Further, Ms. Bevan constantly undermined Plaintiff's authority and began interrupting the Plaintiff during office meetings.

47.     On one occasion, Ms. Bevan required nineteen (19) rounds of revisions on Ms. Smith's design, unnecessarily forcing Plaintiff to miss the project deadline while blaming Plaintiff for the delay.

48.     Similarly, Mr. Chung began to disparage Plaintiff to other graphic design team members by stating that he had no faith in Plaintiff's ability to perform.

49.     Mr. Chung required Plaintiff to attend meetings with him on March 21, 2013, April 12, 2013, April 30, 2013, May 6, 2013, and May 7, 2013.

50.     These meetings typically lasted longer than one (1) hour and Mr. Chung simply berated Plaintiff the entire time.

51.     On May 17, 2013, the Plaintiff provided Defendant Janus Management with a letter of intent informing of possible pending legal claims against the company for violations of the Age Discrimination in Employment Act (hereinafter "ADEA") and Colorado Anti-Discrimination Act (hereinafter "CADA") through her attorney at the law offices of Bryan E. Kuhn, Counselor at Law, P.C.

52.     Later that very same day on May 17, 2013, Mr. Chung delivered a written warning to Plaintiff for "argumentative behavior," and a "glass half-empty" attitude.

53.     On June 7, 2013, counsel for Defendant Janus Management responded to the formal demand for payment, saying that Ms. Smith made repeated comments about the fact that she was "peri-menopausal" to her clients and co-workers making them uncomfortable.

54.    Due to the incredible and mounting stress at work, Ms. Smith took a medical leave of absence from May 21, 2013 through July 2, 2013.

55.    When Ms. Smith returned to work, Mr. Chung continued requiring weekly meetings regarding her performance.

56.    During one of these weekly meetings on July 12, 2013, Mr. Chung asked the Plaintiff, "I want to know do you feel that you are mentally and emotionally invested in being a part of this team and continuing your career here at Janus."  Mr. Chung continued stating, "[t]here is a disconnect.  You don't really say a lot to the rest of the team members."

57.    Plaintiff believes that she competently performed her job and was pleasant and professional to her co-workers.

58.    Mr. Chung did not elaborate or provide measurable and/or definable methods for demonstrating sufficient performance improvement that would allow Plaintiff to succeed, stating only that, "[t]here needs to be more communication."

59.    Disturbed by the discrimination and retaliation that she had endured in her employment, the Plaintiff submitted her Charge of Discrimination in employment against Defendants with the EEOC on August 7, 2013.

60.    The work environment with Defendants continued to decline following her Charge of Discrimination and Ms. Smith began to experience various forms of retaliation which resulted in her having panic attacks at work.

61.    Plaintiff applied for and received leave under the Family Medical Leave Act (hereinafter "FMLA") on September 25, 2013, due to stress induced vertigo and anxiety.

62.    Left with no options, Ms. Smith constructively quit her position of employment on

September 27, 2013.

63.    Ms. Smith wrote in her resignation letter, "I believe I have been improperly forced to submit this resignation as a result of Janus' unlawful conduct."

64.    Further, Ms. Smith stated in Defendants' required Exit Survey that she was, "discriminated against and harassed into a forced resignation due to a hostile work environment."

65.    Plaintiff's position remained open following her resignation and upon information and belief was filed by a younger employee, who was not in the protected class.

66.    Plaintiff received her Notice of Right to Sue from the EEOC on February 12, 2014, and Plaintiff brings this civil action within ninety (90) days thereof.

**FIRST CLAIM FOR RELIEF**
*(Violations of the Age Discrimination in Employment Act (hereinafter "ADEA") –
29 U.S.C. § 621–634 – Discrimination)*

67.    Plaintiff incorporates by reference paragraphs 1 through 66 as if fully set forth herein.

68.    The Plaintiff is an "employee" within a protected age group as those terms are set forth in 29 U.S.C. §§ 630(f) and 631 of the ADEA.

69.    Defendants are an "employer" as the term is defined by 29 U.S.C. § 630(b) of the ADEA.

70.    Plaintiff was clearly qualified to serve as a graphic designer, given her extensive experience, excellent work history, and her lack of prior disciplinary history of any kind.

71.    At all times relevant hereto, Plaintiff was a member of the class of people intended for protection under the ADEA.  Unlike other younger employees, Plaintiff was not promoted to manager, was given a separate supervisor from younger workers, and placed on a different career

path than younger workers.  Further, Plaintiff was placed on a written warning and constructively discharged from her position due to the environment created and condoned by her employer.

72.    Plaintiff was not promoted to manager, and upon information and belief, a younger employee outside of the protected class was given her position.

73.    Defendants, by and through its employees and agents from whom Defendants are responsible under the law, have unlawfully discriminated against Plaintiff based on age with respect to hiring, termination, compensation, promotion and/or other terms and conditions or privileges of employment.

74.    Defendants' actions were unlawful, intentional, willful, and done in reckless violation of Plaintiff's rights under the ADEA.

75.    As a direct, proximate, and foreseeable result of Defendants' intentional violations of Plaintiff's rights under the ADEA, Plaintiff has suffered damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
*(Violations of the ADEA – Wrongful Termination)*

76.    Plaintiff incorporates paragraphs 1 through 75 above and all other averments of the Complaint as if fully set forth herein.

77.    Despite being qualified for her position, the Plaintiff was constructively discharged from her employment because of her age.

78.    The deliberate actions of the Defendants made or allowed Plaintiff's working conditions to become so intolerable that a reasonable person in the employee's position would have no choice but to resign.  Krauss v. Catholic Health Initiatives Mt. Region, 66 P.3d 195, 202-203 (Colo. App. 2003).

79.    Plaintiff resigned because of Defendants' actions.  Krauss v. Catholic Health

Initiatives Mt. Region, 66 P.3d 195, 203 (Colo. App. 2003).

80.   At the time of her constructive discharge, Plaintiff was performing her job at a level that met her employer's legitimate expectations.

81.   There exists a reasonable inference of unlawful discrimination between the Plaintiff's age and her wrongful constructive discharge by Defendants.

82.   Upon information and belief, Plaintiff's position was not eliminated after her constructive discharge, but instead was filed by an individual outside of the protected class.

83.   Defendants, as well as its employees and agents, have unlawfully discriminated against Plaintiff by terminating her based upon her age.

84.   Defendants' actions were unlawful, intentional, willful, and done in reckless disregard of Plaintiff's legal rights as protected by the ADEA.

85.   As a direct, proximate, and foreseeable result of Defendants' intentional violations of Plaintiff's rights under the ADEA, Plaintiff has suffered damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
*(Violations of the ADEA – Retaliation)*

86.   Plaintiff incorporates paragraphs 1 through 85 above and all other averments of this Complaint as if fully set forth herein.

87.   Plaintiff repeatedly participated in statutorily protected opposition to age discrimination by complaining about discrimination based on her age at her place of work.

88.   Adverse employment action in the form of increased workloads, job scrutiny and a written warning was taken against Plaintiff subsequent to and contemporaneously with the Plaintiff's protected activity.

89.   A causal connection exists between the protected activity and the adverse

employment action.  Murray v. City of Sapulpa; 45 F.3d 1417, 1420 (10th Cir. 1995).

90.   The severity of the harassment experienced from Plaintiff's supervisors increased after the Plaintiff first complained about the discrimination leveled against her on the basis of her, and ultimately resulted in Plaintiff's constructive discharge.

91.   As a direct, proximate, and foreseeable result of Defendants' intentional violations of Plaintiff's rights under the ADEA, Plaintiff has suffered damages in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
*(Violations of the ADEA– Hostile Work Environment)*

92.   Plaintiff incorporates by reference paragraphs 1 through 91 as if fully set forth herein.

93.   Plaintiff is a member of a protected class based on her age.

94.   The conduct of which Plaintiff complained was unwelcomed.

95.   The conduct complained of was directed at Plaintiff because of her age.

96.   The conduct was sufficiently severe and/or pervasive so as to alter the terms and conditions of Plaintiff's employment by creating a hostile work environment under both a subjective and objective standard, as provided for in Johnson v. City and County of Denver, 2010 WL 466143 at *8 (D. Colo. Feb 8, 2010); Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed.2d 295, 302 (1993).

97.   Plaintiff believed her work environment to be hostile and abusive as a result of Defendants' conduct including, increased workloads, unwarranted and unfair write ups, unnecessary scrutiny, and failure to promote.

98.   The severity of the harassment increased after Plaintiff complained about the illegal conduct, including Plaintiff's multiple complaint to Defendant's Human Resources department,

and Plaintiff's filing of her Charge of Discrimination with the EEOC.

99.   The nature and frequency of the harassment and hostility Plaintiff endured since she first complained about her employer's conduct unreasonably interfered with the employee's work performance.  Harris v. Forklift Systems, Inc., 510 U.S. 17, 114 S. Ct. 367, 126 L.Ed.2d 295 (1993).

100.  Management level employees should have known of the abusive conduct because Plaintiff provided management level personnel with enough information to raise a probability of age-based harassment in the mind of a reasonable employer.

101.  In addition, the harassment Plaintiff experienced was so pervasive and open that a reasonable employer would have to be aware of it, particularly in light of the fact that Plaintiff complained to Defendant's Human Resources department on numerous occasions.

102.  Plaintiff suffered a tangible employment action by way of increased workloads, failure to promote and her constructive discharge, as a result of the hostile work environment.

103.  As a direct, proximate, and foreseeable result of Defendants' intentional violations of Plaintiff's rights under the ADEA, the Plaintiff has suffered damages in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
*(Violations of the Colorado Anti-Discrimination Act – C.R.S. § 24-34-401, et seq.)*

104.  Plaintiff incorporates by reference paragraphs 1 through 103 as if fully set forth herein.

105.  The Plaintiff is an "employee" as that term is defined by C.R.S. § 24-34-401(2) of the Colorado Anti-Discrimination Act (hereinafter "CADA")

106.  Defendants are an "employer" as the term is defined by C.R.S. § 24-34-401(3) of

the CADA.

107.  Plaintiff was qualified for the job at issue, and despite her qualifications suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination.  Colorado Civil Rights Comm'n v. Big O Tires, Inc. 940 P.2d 397, 400 (Colo. 1997) (modifying approach used in Title VII cases to apply to the various forms of discrimination set forth in C.R.S. § 24-34-402).

108.  Defendants, their employees, and agents unlawfully discriminated against Plaintiff by harassing her during the course of her employment, and by discriminating against Plaintiff in matters of employment because of her age.

109.  Defendants' actions were unlawful, intentional, willful, and done in reckless disregard of Plaintiff's legal rights as protected by the CADA.

110.  As a direct, proximate and foreseeable result of Defendants' intentional violations of Plaintiff's rights under the CADA, Plaintiff has suffered damages in an amount to be proven at trial, and is hereby entitled to all relief provided by the CADA.

### SIXTH CLAIM FOR RELIEF
*(Breach of Contract – Employment Agreement)*

111.  Plaintiff incorporates paragraphs 1 through 110 above and all other averments of this Complaint as if fully set forth herein.

112.  Plaintiff and Defendants entered into an employment agreement whereby Defendants promised not to discriminate by way of its company policies, and this included a commitment to maintain a workplace free of age-based harassment.

113.  The employment agreement entered into between the parties set forth each party's rights, duties, and obligations upon which the employment relationship was to continue.

14

114.  Employees are to report discrimination and harassment, whether observed or experienced, to a supervisor, member of management, or human resources representative.

115.  Plaintiff performed her part of the agreement by satisfactorily performing work in her position and reporting her concerns and claims of discrimination to her supervisors, management, and Defendant Janus Management's human resources representative.

116.  Defendants breached the Parties' employment agreement by discriminating against the Plaintiff on the basis of her age, and by retaliating against her following the Plaintiff's complaints about harassment and discrimination in the workplace, which breach resulted in damages to Plaintiff in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
*(Promissory Estoppel)*

117.   Plaintiff incorporates by reference paragraphs 1 through 116 as if fully set forth herein.

118.   Plaintiff entered into an employment agreement with Defendants wherein the Defendants promised not to discriminate on the basis of age, which promises the Defendants should reasonably have expected the employee would consider as a commitment from Defendants.

119.   In reasonable reliance upon the Defendants' promise not to discriminate against the Plaintiff, the Plaintiff remained working for the Defendants and did not actively seek other employment, to Plaintiff's detriment.

120.   Injustice can only be avoided by enforcement of the Defendants' promise and commitment to maintain a workplace free of age-based harassment.

121.   As a direct, proximate, and foreseeable result of Defendants' failure to perform its promises, the Plaintiff has suffered damages in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### *(Breach of Covenant of Good Faith and Fair Dealing)*

122.   Plaintiff incorporates paragraphs 1 through 121 above and all other averments of the Complaint as if fully set forth herein.

123.   Defendants expressly told Plaintiff she would be treated fairly and in good faith in matters of her employment.

124.   Defendants demonstrated to the Plaintiff a willingness to be bound by such policy.

125.   Plaintiff reasonably understood that Defendants were promising fair treatment as part of the terms and conditions of employment and, with that understanding and in reliance thereon, Plaintiff continued her employment with the Defendants.

126.   Defendants discharged the Plaintiff without complying with their statements of good faith and fair treatment.

127.   As a direct result of Defendants' breach, the Plaintiff has incurred damages in an amount to be proven at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for a judgment to be entered in her favor and against Defendants in an amount sufficient to fully compensate her for economic and noneconomic damages, together with interest from the date of loss, to the full extent as may be permitted by law, under the provisions of Age Discrimination in Employment Act, Colorado Anti-Discrimination Act, and Colorado common law, including by way of description but not

limitation, back pay wages, front pay wages, loss of reputation, emotional and mental distress,

exemplary and punitive damages, if and to the extent allowed by law, consequential damages,

and reasonable attorneys' fees as allowed by law, including all special damages, any relevant

applicable statutory damages, and such relief as this Court deems just and proper under the

circumstances.

### JURY DEMAND

The Plaintiff hereby demands a trial by jury of all issues so triable in the instant action.

Respectfully submitted on March 21, 2014.

BRYAN E. KUHN, COUNSELOR AT LAW, P.C.

*Original pleading bearing original signature maintained in the offices of Bryan E. Kuhn, Counselor at law, P.C.*

s/  *Kate W. Beckman*_____
Bryan E. Kuhn, Esq. #33642
Kate W. Beckman, Esq. #42416
1660 Lincoln Street, Suite 2330
Denver, Colorado  80264
(p) (303)424-4286     (f) (303)425-4013
Bryan.Kuhn@beklegal.com
Kate.Beckman@beklegal.com

ATTORNEYS FOR PLAINTIFF

VERIFICATION

I declare under penalty of perjury that I have read this above Verified Complaint and the statements contained in it are true and correct to the best of my knowledge and belief.

Date:   March _21_ , 2014

_Deanna Smith_
Deanna E. Smith

STATE OF COLORADO       )
                        _Douglas_       ) ss.
COUNTY OF ~~JEFFERSON~~  )

_Douglas_
Subscribed under oath before me in the County of ~~Jefferson~~, State of Colorado, this _21st_ day of March, 2014.

My commission expires on: 10/07/2017

_Elisa A. Bogert_
Notary

```
ELISA A. BOGERT
STATE OF COLORADO
NOTARY PUBLIC
Comm. No. 19934013390
My Commission Expires October 07, 2017
```

18